IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| LAKEISHA McNEAL,   Plaintiff, | ) ) ) |
| v. | ) ) )   CIVIL ACTION NO. 1:19-cv-602-KD-N |
| INTERNATIONAL PAPER,   Defendant. | ) ) ) ) |

**ORDER**

This matter is before the Court on Defendant International Paper's Motion for Summary Judgment (Docs. 52, 53); Plaintiff Lakeisha McNeal's Response (Doc. 60); and Defendant's Reply (Doc. 61).

**I.   Findings of Fact**[1]

Plaintiff Lakeisha McNeal (McNeal), a black female, was hired by Defendant International Paper (IP) April 14, 2014. (Doc. 53-1 at 19 (Dep. McNeal at 40) (discussing hire date); Doc. 53-1 at 227 (letter of employment offer)). Upon being hired, McNeal received a copy of, was made aware of, and read IP's policy against discrimination, harassment, or retaliation. (Doc. 53-1 at 23 (Dep. McNeal at 46)). McNeal worked at IP's Bay Minette, Alabama plant. (Doc. 53-1 at 19 (Dep. McNeal at 40); Doc. 53-3 at 2-3 (Decl. Neal White at 1-2)). While at IP, McNeal primarily worked in the Shipping Department. (Doc. 53-1 at 26 (Dep. McNeal at 52)). At times relevant to this case, Alfred Wallace (Wallace), a white male, was the Shipping department manager. (Doc. 53-1 at 19 (Dep. McNeal at 40)). In 2016, Neal White (White) became the Bay Minette Manufacturing

---

[1] At the summary judgment stage, the facts are taken in the light most favorable to the non-movant. Tipton v. Bergrohr GMBH–Siegen, 965 F.2d 994, 998-99 (11th Cir. 1992). The "facts, as accepted at the summary judgment stage of the proceedings, may not be the actual facts of the case." Priester v. City of Riviera Beach, 208 F.3d 919, 925 n. 3 (11th Cir. 2000).

1

Manager at IP. (Doc. 53-3 at 3 (Decl. White at 2)). Wallace was McNeal's direct supervisor; Wallace reported to White. (Doc. 53-3 at 3 (Decl. White at 2)).

McNeal was a member of the United Steelworkers Union (Union) while employed at IP. (Doc. 53-1 at 20 (Dep. McNeal at 42)). IP had a Labor Agreement with the Union. (Doc. 53-3 at 15 (Labor Agreement)). The Labor Agreement contained a progressive discipline policy. (Doc. 53-3 at 3 (Decl. White at 2); Doc. 53-3 at 15 (Labor Agreement)). "That policy provided that incidents of discipline issued to an employee would be removed from an employee's record after one year." (Doc. 53-3 at 3 (Decl. White at 2)). This policy was in place during McNeal's employment with IP. (Doc. 53-1 at 30-31 (Dep. McNeal at 63-64)). The typical progression of discipline was: (1) a verbal warning; (2) written warning; (3) suspended three days; and (4) termination of employment. (Doc. 53-3 at 3-4 (Decl. White at 2-3)).

On March 29, 2016, McNeal was issued a written warning after she ran the spot truck[2] out of fuel. (Doc. 53-3 at 4 (Decl. White at 3); Doc. 53-1 at 33-34 (Dep. McNeal at 67-68); Doc. 53-1 at 236 (written warning discipline record)). On October 27, 2017, McNeal was disciplined for poor job performance. (Doc. 53-3 at 4 (Decl. White at 3); Doc. 53-1 at 237 (verbal warning discipline record)). "Because McNeal worked for one year without any discipline after each of the 2016 and 2017 discipline events, both of those disciplinary warnings were removed from McNeal's record." (Doc. 53-3 at 4 (Decl. White at 3)).

Relevant to McNeal's termination, on December 20, 2018, McNeal received a verbal warning for failing to follow instructions "regarding production issues on [her] shift." (Doc. 53-1 at 238 (verbal warning discipline record—Step 1)). On January 10, 2019, McNeal was issued a

---

[2] The spot-truck is a semi-tractor used by Shipping department employees to move trailers in the shipping yard. (Doc. 53-3 at 4 (Decl. White at 3)).

written warning after she fell asleep operating a forklift and ran the forks of the forklift into a safety barrier. (Doc. 53-1 at 239 (written warning discipline record—Step 2)). Then, on March 1, 2019, McNeal was suspended for three days after she left her "workstation and took an unauthorized break without following the department process of notifying [her] A1 checker to cover [her] absence on the palletizer." (Doc. 53-1 at 240 (3-day suspension discipline record—Step 3)). Last, on June 27, 2019, McNeal failed to follow shipping instructions when loading a trailer; she was terminated as a result. (Doc. 53-3 at 5 (Decl. White at 4); Doc. 53-1 at 248 (letter of termination—Step 4)). White recommended McNeal's "termination of employment in accordance with the progressive disciplinary policy and based upon her repeated incidents of discipline and her failure to improve her job performance despite these repeated warnings and opportunities to do so." (Doc. 53-3 at 5 (Decl. White at 4)).

On March 1, 2019, after the third step in the progressive disciplinary policy—the 3-day suspension— McNeal filed a grievance through her Union and the Labor Agreement. (Doc. 53-1 at 241 (Grievance)). The Grievance alleged that "she was laid off for the wrong reason...." (Doc. 53-1 at 241 (Grievance)). The remedy requested was that she be paid for her time off and moved from the A-crew because Barbara Stevens-McGinnis "harassed [her] in person and on the radio since 2014" and that White "harassed [her] twice in person in the December of 2018 meetings." Id. Barbara Stevens-McGinnis (Stevens-McGinnis), a black female, was a supervisor in the converting department. (Doc. 53-2 at 54-55 (Dep. White at 65-66)). While McNeal reported to Wallace, her direct supervisor, he was only there during day shifts. (Doc. 53-2 at 54-55 (Dep. White at 65-66)). On shifts which Wallace was not there, the converting supervisor, Stevens-McGinnis, would at times direct McNeal's work. (Doc. 53-2 at 54-55 (Dep. White at 65-66)).

3

IP investigated McNeal's Grievance, including interviewing McNeal, Stevens-McGinnis, White, and other employees. (Doc. 53-1 at 109-111 (Dep. McNeal at 157-160); Doc. 53-3 at 6 (Decl. White at 5); Doc. 53-2 at 49-52 (Dep. White at 60-63)). Thereafter, IP denied McNeal's Grievance. (Doc. 53-1 at 243-44). The Union did not appeal. (Doc. 53-1 at 245-247 (email correspondence between IP's Bay Minette Plant Manager and Union representative)).

On August 6, 2019, McNeal filed a Charge of Discrimination with the Equal Employment Opportunity Commission (EEOC). (Doc. 53-1 at 251 (Charge of Discrimination)). The EEOC dismissed McNeal's charge on August 14, 2019 concluding it was "unable to conclude that the information obtained establishes violations of the statutes." (Doc. 53-1 at 249 (EEOC Dismissal and Notice of Rights)).

McNeal brought this action against IP alleging claims for race discrimination per Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e, *et. seq.*, (as amended) and 42 U.S.C. § 1981, sex discrimination under Title VII, and retaliation per Title VII and Section 1981. IP now moves for summary judgment as to each of McNeal's claims. (Docs. 52-54).

**II.**   **Standard of review**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). Defendants, as the parties seeking summary judgment, bear the initial responsibility of informing the district court of the basis for their motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact. Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). If the nonmoving party fails to make a sufficient showing on an

essential element of his case with respect to which he has the burden of proof—that a genuine dispute of material fact exists—the moving party is entitled to summary judgment. Celotex, 477 U.S. at 323. "In reviewing whether the nonmoving party has met its burden, the court must stop short of weighing the evidence and making credibility determinations of the truth of the matter…the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Tipton v. Bergrohr GMBH-Siegen, 965 F.2d 994, 998–99 (11th Cir. 1992) (internal citations and quotations omitted).

**III.   Analysis**

**A.    Race and Sex Discrimination Claims**

Under Title VII and Section 1981,[3] it is unlawful for an employer to "discharge any individual or otherwise to discriminate against any individual" because of the individual's race or sex. 42 U.S.C. § 2000e-2(a)(1). "In order to survive summary judgment, a plaintiff alleging intentional discrimination must present sufficient facts to permit a jury to rule in her favor." Lewis v. City of Union City, Georgia, 918 F.3d 1213, 1220 (11th Cir. 2019). McNeal may establish her claims with direct evidence, circumstantial evidence, or statistical proof. Rioux v. City of Atlanta, Ga., 520 F.3d 1269, 1274 (11th Cir. 2008).[4] There is no allegation or submission of direct evidence

---

[3] When a Title VII claim is based on the same facts as a Section 1981 claim, "the analysis is the same under all theories of liability, and the claims need not be analyzed separately." Lindsey v. Board of School Com'rs of Mobile Cty., 491 Fed. Appx. 8, 9 (11th Cir. 2012). See also e.g., Richardson v. Leeds Police Dep't, 71 F.3d 801, 806 (11th Cir. 1995) (with "disparate treatment, in which § 1983 is employed as a remedy for the same conduct attacked under Title VII, the elements of the two causes of action are the same[ ]"); Abel v. Dubberly, 210 F.3d 1334, 1338 (11th Cir. 2000) (same); Butts v. County of Volusia, 222 F.3d 891, 893-894 (11th Cir. 2000) (same). See also King v. Butts Cty., 576 Fed. Appx. 923, 931 (11th Cir. 2014) (same). As such, the claims are analyzed together.

[4] "Direct evidence of discrimination would be evidence which, if believed, would prove the existence of a fact [in issue] *without inference or presumption*." Carter v. City of Miami, 870 F.2d 578, 581–82 (11th Cir. 1989) (emphasis added); accord Castle v. Sangamo Weston, Inc., 837 F.2d 1550, 1558 n. 13 (11th Cir. 1988); Rollins v. TechSouth, Inc., 833 F.2d 1525, 1528 n. 6 (11th Cir. 1987). "[O]nly the most blatant remarks, whose intent could be nothing other than to discriminate on the basis of age, ... constitute direct evidence of discrimination." Carter, 870 F.2d at 582. For example, a management memorandum saying, "Fire Earley—he is too old" would be direct evidence of age discrimination. Earley v. Champion Intern. Corp., 907 F.3d 1077, 1081 (11th Cir. 1990).

5

or statistical proof. Thus, McNeal's claims are based on circumstantial evidence. When "a plaintiff relies upon circumstantial evidence to support [their] discrimination claim," the Eleventh Circuit "analyze[s] it according to the familiar burden shifting framework established in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973)." Smelter v. S. Home Care Servs. Inc., 904 F.3d 1276, 1288 (11th Cir. 2018). The Eleventh Circuit explained:

> When proceeding under *McDonnell Douglas*, the plaintiff bears the initial burden of establishing a *prima facie* case of discrimination by showing (1) that she belongs to a protected class, (2) that she was subjected to an adverse employment action, (3) that she was qualified to perform the job in question, and (4) that her employer treated "similarly situated" employees outside her class more favorably. *See, e.g.*, Holifield v. Reno, 115 F.3d 1555, 1561–62 (11th Cir. 1997) (citing *McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. 1817). If the plaintiff succeeds in making out a *prima facie* case, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its actions. Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). Finally, should the defendant carry its burden, the plaintiff must then demonstrate that the defendant's proffered reason was merely a pretext for unlawful discrimination, an obligation that "merges with the [plaintiff's] ultimate burden of persuading the [factfinder] that she has been the victim of intentional discrimination." Id. at 256, 101 S.Ct. 1089.

Lewis, 918 F.3d at 1220-21. The Court thus turns to the burden-shifting framework outlined in McDonnell Douglas.

A plaintiff can also survive summary judgment by presenting a convincing mosaic of circumstantial evidence that creates a triable issue concerning the employer's discriminatory intent. Chapter 7 Tr. v. Gate Gourmet, Inc., 683 F.3d 1249, 1255 (11th Cir. 2012). "A plaintiff may use non-comparison circumstantial evidence to raise a reasonable inference of intentional discrimination and thereby create a triable issue. If the circumstantial evidence is sufficient to raise a reasonable inference that the employer discriminated against the plaintiff, the plaintiff has presented a prima facie case." McPhie v. Yeager, 819 Fed.Appx. 696, 699 (11th Cir. 2020) (citing Chapter 7 Tr., 683 F.3d at 1255).

    1.    *Prima Facie* Case

"Under McDonnell-Douglas, a plaintiff establishes a *prima facie* case of race [or sex] discrimination by demonstrating that she (1) is a member of a protected class, (2) was qualified for her position; (3) suffered an adverse employment action, and (4) was replaced by someone outside of her protected class or was treated less favorably than a similarly situated employee outside of her class." Abram v. Von Maur, Inc., 719 Fed.Appx. 929, 931 (11th Cir. 2018) (citing McDonnell-Douglas, 411 U.S. 792); Lewis, 918 F.3d at 1224 (same).

McNeal satisfies the first three elements of her *prima facie* case because: 1) McNeal is a black female; she was qualified for her job; and she was terminated. See e.g., St. Mary's Honor Center v. Hicks, 509 U.S. 502, 506 (1993) (satisfying the prima facie case in part because the plaintiff was black, was qualified, was demoted, and ultimately was terminated). IP does not dispute that these elements are satisfied for purposes of summary judgment. (Doc. 54 at 16). Because McNeal does not contend she was replaced by someone outside of her protected class, she must show she "was treated less favorably than a similarly situated employee outside of her class" to establish her *prima facie* case. Lewis, 918 F.3d at 1224.

As to the fourth element, McNeal must show that "she and her preferred comparators were 'similarly situated in all material respects.'" Lewis, 918 F.3d at 1224 (explaining the parameters of this standard in a termination case). And see Smith v. Vestavia Hills Board of Education, 791 Fed.Appx. 127, 131 (11th Cir. 2019) (same). This does not require that the proffered comparators have the exact job title or that the plaintiff "and her comparators be identical save for their race or gender." Lewis, 918 F.3d at 1227. The Eleventh Circuit explained that a comparison "will turn not on formal labels, but rather on substantive likeness." Id. at 1228. "Ordinarily, for instance, a similarly situated comparator:"

- will have engaged in the same basic conduct (or misconduct) as the plaintiff, *see, e.g.*, *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 580, 583 (6th

> Cir. 1992) (holding that a plaintiff terminated for "misuse of [an employer's] property" could not rely on comparators allegedly guilty of "absenteeism" and "insubordination");
>
> - will have been subject to the same employment policy, guideline, or rule as the plaintiff, *see, e.g.*, *Lathem*, 172 F.3d at 793 (holding that a plaintiff's proffered comparators were valid where all were subject to the same "workplace rules or policies");
>
> - will ordinarily (although not invariably) have been under the jurisdiction of the same supervisor as the plaintiff, *see, e.g.*, *Jones v. Gerwens*, 874 F.2d 1534, 1541 (11th Cir. 1989) (observing that "disciplinary measures undertaken by different supervisors may not be comparable for purposes of Title VII analysis"); and
>
> - will share the plaintiff's employment or disciplinary history, *see, e.g.*, *Tennial v. United Parcel Serv., Inc.*, 840 F.3d 292, 304 (6th Cir. 2016) (explaining that "[d]ifferences in experience and disciplinary history" can disqualify a plaintiff's proffered comparators).

Id. at 1227-28. In Lewis, the Eleventh Circuit expressly acknowledged that the 'all material respects' standard "serves the interest of sound judicial administration by allowing for summary judgment in appropriate cases—namely, where the comparators are simply too dissimilar to permit a valid inference that invidious discrimination is afoot." Id. at 1228.

Per IP, this is where McNeal's *prima facie* case fails. (Doc. 54 at 16). IP contends McNeal "has not offered any potential comparators to support her discrimination claims as to her termination." (Id.) (emphasis in original). Specifically, IP asserts that "[w]hile she testified that other employees (in some cases "all" or a "majority") allegedly committed one or more of the individual acts of misconduct of poor job performance for which she was disciplined…, what she has utterly failed to do is offer any evidence of potential comparators who committed at least four such acts that warranted discipline within a one year period (in accordance with the progressive discipline policy)." (Id. at 16-17).

In response, McNeal states she identified male comparators in her deposition testimony and in interrogatories who committed various misconduct without being terminated and/or disciplined. (Doc. 60 at 7-8). These male comparators include: Marcus Cale, Terry Phillips, David (Allen) Lingerfelt, Daniel (Scottie) McGhee, Michael (Brad) Gibbs, Tom Anderson, Raymond Seals and Terry Perkins. McNeal also generally asserts "everyone" committed the same misconduct she did without reprimand. (Doc. 53-1 at 94 (McNeal Dep. at 141)).[5] The Eleventh Circuit's guidance in <u>Lewis</u> instructs that at this juncture we assess the following factors: 1) jurisdiction of the same supervisor; 2) subject to the same employment policies; 3) similar disciplinary histories; and 4) similar conduct/misconduct. <u>Lewis,</u> 918 F.3d at 1227-28.

First, McNeal does not present evidence regarding which departments these men worked in or who their supervisors were. In White's declaration, he indicates Tom Anderson "worked in the Converting department and, therefore, had a different direct supervisor than McNeal." (Doc. 53-3 at 7 (Decl. White at 6)). Thus, Anderson is not a proper comparator.

Even assuming the other men had the same supervisors as McNeal, the evidence is insufficient to establish that they are similarly situated in all material respects. First, the Court notes that McNeal presents no evidence about Marcus Cale, Daniel McGhee or Michael Gibbs. Without any information about these individuals disciplinary history or prior misconduct, the Court cannot determine whether they are proper comparators. Thus, McNeal failed to carry her burden to show how these individuals are proper comparators, similarly situated in all material respects.

---

[5] In her reply, McNeal states in the section titled "Comparators" that she identified male employees who were treated different than her. She does not reference the interrogatory page but the Court assumes she is referencing the men noted *supra*. (Doc. 53-3 at 34-35). The Court also cross-referenced the names listed in McNeal's interrogatories with those White lists in his declaration. (Doc. 53-3 at 7).

9

In her response, McNeal focuses her comparator discussion on Terry Phillips, Raymond Seals and Terry Perkins. McNeal claims "Perkins was given multiple opportunities through 3 suspensions, 6 total write ups and cost the company over $40,000.00 before his termination was justified." (Doc. 60 at 10 (citing Doc. 53-3 at 62-69)). As IP explains, McNeal overlooks the progressive discipline policy which includes the automatic roll-off of discipline after 12 months. (Doc. 61 at 2-3).[6] When Perkins received four disciplinary actions in one year, he was terminated, like McNeal. (Doc. 53-3 at 62, 69). McNeal is correct that Perkins "committed more than 4 infractions and was given multiple opportunities before he was terminated" but his progressive discipline was pursuant to the same policy to which McNeal was subject. (Doc. 53-3 at 62-69). Over the course of her time with IP, McNeal received more than 4 disciplinary actions though she too benefitted from the automatic roll-off of discipline; she also received more than 4 infractions before being terminated. See generally (Doc. 53-1 at 236-240; 248). So, McNeal's argument that Perkins was treated more favorably than her is contradicted by the record.

She also contends Phillips (white male) and Seals (black male) "took unauthorized breaks and damaged their assigned fork lift without being terminated." (Doc. 60 at 7). Specifically, McNeal testified that Seals "used to doze off all the time and run into stuff" on the fork lift. (Doc. 53-1 at 72 (Dep. McNeal at 113)). She contends Phillips "used to run into stuff backing the trailer, go to sleep." (Id.). McNeal has failed to provide sufficient information from which the Court could determine whether the comparators are similarly situated in all material respects. Apart from the brief description in her deposition, the record contains no other information relating to Phillips and Seals. McNeal does not provide any information about the timing of these incidents, which is

---

[6] White states in his declaration that the policy "provided that incidents of discipline issued to an employee would be removed from an employee's record after one year." (Doc. 53-3 at 3 (Decl. White at 2)). In his deposition, White explains that an employee does not have to go 12 months without *any* infraction—disciplinary actions roll off automatically after 12 months pass. (Doc. 53-2 at 33 (Dep. White at 39)).

10

important to contextualize given the progressive disciplinary policy and the roll-off of discipline after twelve months. She also does not discuss whether she shared a similar disciplinary history with these men. In sum, McNeal has not carried her burden to meet the fourth element of her *prima facie* case.

## 2. Legitimate, Nondiscriminatory Reason

Assuming McNeal could establish a prima facie case of racial discrimination, which the Court finds she cannot, "the burden then shifts to the employer to rebut it by producing evidence that the employer's action was taken for some legitimate, non-discriminatory reason. If the employer meets its burden of production, the presumption of discrimination raised by the plaintiff's prima facie case is rebutted and thus disappears." Smith, 644 F.3d at 1325-26. Although the establishment of a prima facie case shifts the burden of production to the defendant, it does not reallocate the burden of persuasion. St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 507, 113 S. Ct. 2742, 2747, 125 L.Ed.2d 407 (1993) (quoting Texas Dep't. of Cmty. Affairs v. Burdine, 450 U.S. 248, 253, 101 S. Ct. 1089, 1093, 67 L.Ed.2d 207 (1981) ("The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.")).

The Eleventh Circuit has ruled that "if the employer fired an employee because it honestly believed that the employee had violated a company policy, even if it was mistaken in such belief, the discharge is 'not because of race' ...." Smith v. Papp Clinic, P.A., 808 F.2d 1449, 1452-53 (11th Cir. 1987); see also Howard v. Jackson Cty. Health Care Auth., 2016 WL 2766782 (N.D. Ala. May 13, 2016) ("An employer's honest belief that an employee violated a company policy constitutes a legitimate, nondiscriminatory reason for termination.") (collecting cases). And, "[a] legitimate, nondiscriminatory reason may be a subjective one, so long as the employer 'articulates

11

a clear and reasonably specific factual basis upon which it based its subjective opinion.'" Willis v. Koch Agronomic Services, Inc., 846 Fed.Appx. 787 (11th Cir. 2021).

IP contends it "has satisfied its burden of production for the employment decisions at issue by presenting evidence of Plaintiff's misconduct and poor job performance during 2018 and 2019 for which she was disciplined and that she was terminated in accordance with the progressive discipline policy." (Doc. 54 at 18). The record reflects disciplinary actions for each of the instances of misconduct, with explanations regarding the specific misconduct at issue. See (Doc. 53-1 at 238-240, 248 (McNeal's pertinent disciplinary write-ups)). IP has articulated a clear and reasonably specific factual basis for each instance of disciplinary action which culminated in McNeal's termination; it has satisfied its burden to show a legitimate, non-discriminatory reason for terminating McNeal.

### 3.     Pretext

In Cooper v. Jefferson County Coroner and Medical Examiner Office, 2021 WL 2376370, at *4 (11th Cir. Jun 10, 2021) summarized:

> If the employer articulates one or more legitimate, non-discriminatory reasons for its action, the plaintiff must show that the defendant's reason was pretextual. *McDonnell Douglas*, 411 U.S. at 804, 93 S.Ct. 1817. To show pretext, a plaintiff must specifically respond to the employer's proffered reason and produce evidence directly rebutting that reason. *Holland*, 677 F.3d at 1055. A plaintiff may show that an employer's reasons are pretextual by showing that "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions" in its proffered reasons for its actions were such that a reasonable factfinder could find them unworthy of credence. *Id.* at 1055–56. If the proffered reason is one that would motivate a reasonable employer, a plaintiff cannot simply quarrel with the wisdom of the employer's decision. *Chapman v. AI Transp.*, 229 F.3d 1012, 1030 (11th Cir. 2000) (en banc). A proffered reason cannot "be a pretext for discrimination unless it is shown both that the reason was false, and that discrimination was the real reason." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993) (internal quotation marks and emphases omitted).

Cooper, 2021 WL 2376370 at *4. IP clearly articulated each disciplinary action in the progressive disciplinary process that led to McNeal's termination: falling asleep while operating a forklift, taking an unauthorized break, misloading the trailer, and failing to follow instructions. (Doc. 53-1 at 238-240, 248). McNeal admits to falling asleep while operating the forklift, taking an unauthorized break and misloading the trailer; she agrees that termination was the next step per the progressive disciplinary policy. (Doc. 53-1 at 61-63, 84, 153-155, 165, 192 (Dep. McNeal at 102-104, 131, 207-209, 219, 263).[7]

In an effort to show pretext, McNeal generally points to other employees who fell asleep operating the forklift, and then states all employees ran into things with the forklift, took unauthorized breaks or went to the bathroom without permission. (Doc. 53-1 at 62 (Dep. McNeal at 103) (everyone bumped into things with the forklift); Doc. 53-1 at 96 (Dep. McNeal at 143) (everyone took unauthorized breaks and went to the bathroom without permission). But, the individuals she points to are both black and white, male and female. (Doc. 53-1 at 162-63 (Dep. McNeal at 216-217). And, while McNeal generally asserts that other employees were not disciplined, IP provided disciplinary records for similar misconduct for both men and women, and both black and white employees. (Doc. 53-3 at 7-8 (Decl. White at 6-7); Doc. 53-3 at 39-43 (disciplinary records for other shipping department employees)). Accordingly, McNeal's assertion does not advance her contention that the reason she was terminated was based on her race or sex. She simply has not revealed any "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions" in IP's proffered reasons such that a reasonable factfinder would find them unworthy of credence. See Cooper, 2021 WL 2376370 at *4. "Rather, [IP's] reasons are ones that

---

[7] McNeal initially said she did not recall the conduct which gave rise to the first disciplinary action. Later, she testifies that the write-up (Step 1) was for not following her supervisor's instructions about blowing out the machine, but she said she faithfully blew out the machine and the palletizer was just broken. (Doc. 53-1 at 80 (Dep. McNeal at 123)).

13

would motivate a reasonable employer." Id. at *4 (citing Chapman v. Al. Transp., 229 F.3d 1012, 1030 (11th Cir. 2000)).

### 4. Convincing Mosaic

McNeal can survive summary judgment if she can show "a convincing mosaic"[8] of circumstantial evidence that raises an inference IP discriminated against her. White v. Dixie, 741 Fed.Appx. 649, 657 (11th Cir. 2018) (citing Smith v. Lockheed-Martin Corp., 644 F.3d 1321, 1328 (11th Cir. 2011)). "The evidence presented under a 'convincing mosaic' *must be sufficient enough* 'to overcome the lack of comparator evidence.'" Blash v. City of Hawkinsville and Pulaski County, Georgia, Sheriff's Office, 2019 WL 7340132 (M.D. Ga. 2019) (quoting Woodward v. Jim Hudson Luxury Cars, Inc., 2019 WL 4793058, *8 (S.D. Ga. 2019)).

McNeal makes no argument as to this point and the record shows both men and women, and black and white employees were disciplined for similar conduct for which McNeal was subject to discipline. (Doc. 53-3 at 39-74 (disciplinary records for other employees)). She testified she did not hear remarks about her race or her sex from managerial employees. (Doc. 53-1 at 49-53 (Dep. McNeal at 88-92)). Nor does evidence about McNeal's proposed comparators give rise to a convincing mosaic. As noted above, McNeal provides scant evidence about her proposed comparators. And the individual on which she focuses—Perkins—was terminated after accumulating four disciplinary infractions, in a twelve month consecutive period, just like McNeal. Thus, McNeal's circumstantial evidence is insufficient to raise a reasonable inference that IP discriminated against her based on her sex or race. See e.g., McPhie, 819 Fed.Appx. at 700 (finding plaintiff failed to show a convincing mosaic of circumstantial evidence).

---

[8] A "convincing mosaic" may be shown by evidence that demonstrates, among other things, (1) "suspicious timing, ambiguous statements ..., and other bits and pieces from which an inference of discriminatory intent might be drawn," (2) systematically better treatment of similarly situated employees, and (3) that the employer's justification is pretextual. Lewis II, 934 F.3d at 1185 (citing Silverman, 637 F.3d at 733-34).

**B.      Retaliation**

McNeal also asserts violations of Title VII and Section 1981, alleging she was retaliated against for filing a grievance following her suspension. Title VII of the Civil Rights Act of 1964 forbids employment discrimination against "any individual" based on that individual's "race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a). The anti-retaliation provision in Title VII forbids an employer from "discriminat[ing] against" an employee because that individual "opposed any practice" made unlawful by Title VII or "made a charge, testified, assisted, or participated in" a Title VII proceeding or investigation. § 2000e–3(a).

Section 1981, U.S.Code Title 42, also prohibits retaliation based on race, even though the statute is silent on that cause of action. CBOCS West v. Humphries, 553 U.S. 442, 457, 128 S.Ct. 1951, 170 L.Ed.2d 864 (2008). "The elements required to establish retaliation claims under § 1981 are the same as those required for Title VII claims." Worley v. City of Lilburn, 408 Fed.Appx. 248, 250 (11th Cir. 2011) (collecting cases holding same).

Courts apply the burden shifting framework from McDonnell Douglas in retaliation cases. "A plaintiff may establish a prima facie case of retaliation by presenting evidence that (1) he engaged in statutorily protected expression, (2) the employer took action that would have been materially adverse to a reasonable employee, and (3) there was some causal relation between the two events." Worley, 408 Fed.Appx. at 250 (citing Pennington v. City of Huntsville, 261 F.3d 1262, 1266 (11th Cir. 2001). And see Debe v. State Farm Mutual Automobile Insurance Company, 2021 WL 2333521, at *1 (11th Cir. June 8, 2021).

The parties do not dispute that McNeal's termination constitutes an adverse employment action sufficient to meet the second element of her prima facie case. See generally (Doc. 54 at 26 (addressing only elements one and three); Matthews, 2018 WL 3041831 at *7 ("There is no dispute

15

that Plaintiff suffered a materially adverse employment action—she was terminated."). So, McNeal must establish she engaged in a statutorily protected activity and that there was a causal connection between that activity and her termination. IP avers McNeal cannot satisfy either element. The Court agrees.

### 1. Statutorily Protected Activity

McNeal must establish that she engaged in a protected activity to satisfy the first element of her prima facie case. She "can do this under either of the two clauses of the anti-retaliation provision[s] which are known as the 'Participation Clause' and the 'Opposition Clause.'" Brush v. Sears Holdings Corp., 466 Fed.Appx. 781, 785 (11th Cir. 2012). McNeal contends her "retaliation claim falls within the opposition clause." (Doc. 60 at 13). "A complaint about an employment practice, however, constitutes protected opposition only if the individual explicitly or implicitly communicates a reasonable belief that the practice constitutes unlawful employment discrimination against a class protected by Title VII or Section 1981." Canty v. Fry's Elec., Inc., No. 09-CV-3508WSDLTW, 2012 WL 1038619, at *9 (N.D. Ga. Feb. 2012) (citing Murphy v. City of Aventura, 383 Fed.Appx. 915, 918 (11th Cir. 2010) (concluding that employee who complained that city manager was bullying her did not engage in protected activity because there was no communication that employee perceived the conduct to be sexually harassing)); Birdyshaw v. Dillards, Inc., 308 Fed.Appx. 431, 436-37 (11th Cir. 2009) (where written complaint did not reference gender discrimination or any other discrimination prohibited by Title VII and where verbal complaint only suggested discrimination on the basis of age, employee did not engage in protected activity under Title VII)).

McNeal's Grievance alleges Stevens-McGinnis and White "harassed" her; the grievance makes no allegation regarding McNeal's sex, race, or that IP engaged in unlawful employment

16

practices more generally. (Doc. 53-1 at 241 (McNeal's union grievance)).[9] Her Grievance also makes no implicit or explicit connection between the alleged harassment and any class protected by Title VII or Section 1981. See Canty, 2012 WL 1038619 at *9. "Title VII…does not prohibit harassment alone, however severe and pervasive. Instead, Title VII prohibits discrimination, including harassment that discriminates based on a protected category such as sex." Baldwin v. Blue Cross/Blue Shield of Alabama, 480 F.3d 1287, 1301-02 (11th Cir. 2007). Here, McNeal does not "allege that any of her complaints were based upon a protected activity; as such, she did not engage in statutorily protected activity and cannot establish a prima facie case of retaliation under Title VII." Matthews, 2018 WL 3041831 at *8. And see Matthews v. Faurecia Automotive Seating, Inc., 2018 WL 3041831, at *8 (N.D. Ala. June 19, 2018) (quoting Coutou v. Martin Cty. Bd. Cty. Com'rs, 47 F.3d 1068, 1074 (11th Cir. 1994) (per curiam) ("Pursuant to Eleventh Circuit precedent, Matthews' filing of a grievance with her a union does not qualify as protected activity within the ambit of Title VII. 'Unfair treatment, absent discrimination based on sex, or national origin, is *not* an unlawful employment practice under Title VII.'"). And see Satchel v. School Bd. of Hillsborough County, 251 Fed.Appx. 626, 628 (11th Cir. 2007) (affirming dismissal of Title VII retaliation claim based om filing of a union grievance reasoning that a union grievance is not a protected activity where it failed to allege in the grievance anything related to race or otherwise indicate the School Board was engaged in unlawful employment practices). Thus, McNeal cannot

---

[9] "Although she eventually filed a complaint with the Equal Employment Opportunity Commission ("EEOC") alleging race, age, and [retaliation], she filed that complaint in [August 2019] months after she was terminated from employment. While an EEOC complaint constitutes protected activity under Title VII, [McNeal] did not engage in this activity while she was still employed by [IP] and, thus, has failed to establish a causal connection between the protected activity and her termination from employment, which is necessary to sustain a claim of retaliation." Satchel v. School Bd. of Hillsborough County, 251 Fed.Appx. 626, 628 (11th Cir. 2007). And see (Doc. 53-1 at 251 (EEOC Charge of Discrimination)).

show she engaged in statutorily protected expression; she cannot satisfy the elements of her prima facie case.[10]

### 2. Causal Link

As to the causal link, McNeal contends IP is mistaken in focusing its causal link analysis on the five month gap between when McNeal filed her grievance and when she was terminated. (Doc. 60 at 13). Instead, McNeal contends "the more relevant time period is the *seven days* between the company learning" that the union would drop the grievance, allowing IP to proceed to the fourth step of discipline—termination. (Id. at 14) (emphasis in original).

To establish a causal link, McNeal must show that IP's "'desire to retaliate was the but-for cause of the challenged employment action.'" Cheatham, 682 Fed. Appx. at 886 (citing Booth v. Pasco Cty., Fla., 757 F.3d 1198, 1207 (11th Cir. 2014)). A plaintiff can meet this element by offering sufficient evidence that the employer knew of the statutorily protected activity and that there was a close temporal proximity between this awareness and the adverse employment actions. Higdon v. Jackson, 393 F.3d 1211, 1220 (11th Cir. 2004); see Clark Cty. Sch. Dist. v. Breeden, 532 U.S. 268, 273 (2001) (holding that the temporal proximity must be "very close"). The Eleventh Circuit "construe[s] the causal link element broadly so that a plaintiff merely has to prove that the protected activity and the negative employment action are not completely unrelated." Cooler v. Layne Christensen Company, 710 Fed.Appx. 842, 845 (11th Cir. 2017) (citations omitted).

---

[10] McNeal argues she cannot be faulted as "a non-attorney, for not specifically stating the form of discrimination in her union grievance." (Doc. 60 at 13). McNeal cites no authority for this proposition. She continues by stating "[h]arrassment is a form of employment discrimination prohibited by Title VII." (Id. at 13). She then provides a link to the EEOC page concerning harassment. The link to the EEOC page describes that "Harassment is unwelcome conduct that is based on race, color, sex…national origin, older age…disability, or genetic information…" Similarly, as the case law *supra* reveals, it is not harassment alone that's prohibited; it is harassment that discriminated on a protected class. See e.g., Baldwin v. Blue Cross/Blue Shield of Alabama, 480 F.3d at 1301-02. McNeal's grievance makes no connection between her allegations of harassment and any class protected by Title VII or Section 1981. Thus, McNeal cannot show she engaged in a protected activity. McNeal's conclusory statements in her grievance and in her Response do not support a different conclusion.

"[W]hen there is a substantial delay between the protected activity and the adverse action, a plaintiff must submit other evidence supporting causation to survive summary judgment." Id. (citing Thomas v. Cooper Lighting, Inc., 506 F.3d 1361, 1364 (11th Cir. 2007) (per curiam)). And, "to show the two things were not entirely unrelated, the plaintiff must generally show that the decision maker was aware of the protected conduct at the time of the adverse employment action." Borden v. Cheaha Regional Mental Health Center, Inc., 760 Fed.Appx. 828, 833 (11th Cir. 2019) (citations omitted).

McNeal argues, as to the first element in her prima facie case ,that her protected activity was filing the Grievance with her Union on March 1, 2019. (Doc. 53-1 at 241 (Grievance)). Then, as to the causal link requirement, she asserts that the Court should measure the time lapsed from the dropping of the Union Grievance to the date she was terminated—seven days. (Doc. 60 at 13). The rationale and authority for this proposition are missing from McNeal's brief. Once the Grievance was resolved, the violation merely remained on the record. The Court is not aware of any authority that indicates the conclusion of the protected activity is the date the Court should consider when evaluating temporal proximity. And the Court fails to see how the resolution of the Grievance in IP's favor supports McNeal's claim of retaliation.

McNeal could meet her burden to show a causal link by showing close temporal proximity between her protected activity and the adverse action. Jones v. Department of Corrections, 792 Fed.Appx. 694, 697 (11th Cir. 2019). "But mere temporal proximity, without more, must be very close." Thomas, 506 F.3d at 1364. "In Thomas, for example, [the Eleventh Circuit] concluded that a three-month period between when an employee filed a sexual harassment complaint and when she was fired did not establish a causal connection." Jones, 792 Fed.Appx. at 697 (citing Thomas,

19

506 F.3d at 1364). Thus, the five month gap between when McNeal filed her grievance with the Union and when she was terminated, alone, would be insufficient to establish causation.

McNeal has not provided any other evidence showing her termination was related to her Grievance. Instead, the unrebutted evidence shows McNeal was terminated for misloading a trailer, which was the fourth instance of misconduct in twelve months, resulting in termination per the progressive discipline policy. Thus, McNeal failed to establish her prima facie case of retaliation.

Even if McNeal met her burden, as noted *supra*, McNeal failed to refute IP's legitimate, non-discriminatory reasons for terminating her. See Jones, 792 Fed.Appx. at 697 (holding same where the plaintiff did not refute employer's legitimate, non-discriminatory reasons for firing him). Rather, IP terminated McNeal in line with the progressive disciplinary policy after McNeal committed her fourth disciplinary infraction within twelve months. McNeal did not show these reasons were pretextual.

### IV.  Conclusion

For the reasons discussed herein, International Paper's Motion for Summary Judgment (Doc. 52) is **GRANTED** on all claims.

**DONE** and **ORDERED** this the **21st day** of **July 2021**.

/s/ Kristi K. DuBose
**KRISTI K. DuBOSE**
**CHIEF UNITED STATES DISTRICT JUDGE**